Parker C. J.
delivered the opinion of the Court. The question presented in this case is entirely new ; no authorities have been cited, nor have we been able to find any which bear very strongly upon it.
The plaintiff made the third attachment upon the goods apparently belonging to John Brown, to secure his debt.
The defendant had sufficient funds m his hands, the proceeds of the goods attached, to satisfy the judgment in this suit, in whole or in part, if he is not obliged in law to appropriate them to tne satisfaction of another judgment obtained by Bogart & Co. against John and Aaron Brown, who made their attachment on the same goods, after the attachment made by the plaintiff; and the right of priority is supposed to be in Bogart & Co., because John and Aaron Brown are found to be partners, having a joint interest in the stock of goods which were attached, upon the principle that the partnership fund is to be applied to the payment of partnership debts, before a separate creditor of one of the firm can be allowed to resort to it for satisfaction of his debt. The principle is well settled, having been first applied to cases of distribution under commissions of bankruptcy. But it is a reasonable principle, and has been adopted and enforced by this Court in the case of Pierce v. Jackson, 6 Mass. R. 242, and is there said to be a principle of the common law.
It is only the application of this principle to cases as they arise, which can afford any room for argument or doubt , and in order to determine such question, the reason of the rule must be sought for, and the particular case must be brought within the reason, as well as within the terms of the law.
The basis upon which the rule rests, is, that those funds shall be liable upon which the credit was given. Those who sell goods or make contracts with a company or firm, are supposed to trust to the ability or property of the firm. Those who trust the individual member, rely upon his sufficiency alone. The former are equitably entitled to be first paid out of the joint stock, and if after paying all the debts there is still a surplus, that is the property of the individuals *353 m proportion to their interest in the common fund, and to that extent only is it liable to the creditor of the individual. In the case of common public partnerships there is no difficulty in applying the principle, and in case of bankruptcy or insolvency it is the fair mode of distribution of the effects.
But the case before us is that of a dormant partnership, which is necessarily, from its very character, unknown at the time the liability is incurred. All the creditors sold their goods or made their contract with the ostensible, visible partner : they trusted to him personally, and to the goods upon which he was trading as his. The dormant partner is brought to light by ex post facto investigation, and he is made responsible, not because he was trusted, but because he secretly enjoyed the profits of the business. Now in such case, the reason for giving preference to such creditors as may first discover his liability, so that stock ostensibly belonging to the visible partner shall first be applied to the satisfaction of their debts, does not exist. Even if he owned the whole of the stock, as between him and the known man of business, still it is in law the property of the latter, for he is allowed to claim and use it as his alone, and thus lead persons to trust him upon the faith of the goods in his possession.
Whether a private creditor of his could seize property so situated and hold it against the creditors of the ostensible owner, is a question of a different nature.
The question now is, whether, when all the creditors have trusted the man of business and apparent owner of the goods, any one of them who is behind the rest in his attachment, shall supplant them and gain priority because he has discovered this concealed liability. At the time the debt was created, he stood upon the same footing with the rest; he trusted John Brown and the goods in his possession; so did they. They have taken possession first of the fund which was held out to the public as the means of credit, and it might be, and probably was in this very case, that the goods attached are the identical goods which they sold to the party sued. There would be then no pretence of equity, and we think not *354 of law, in allowing a preference founded upon no meritorious distinction of circumstances.
That this question has not arisen before, is owing perhaps principally to the fact, that most of the dormant partnerships have been such as have resulted from a loan of money to be employed in the partnership concerns, where the receipt of a part of the profits of the business has been the compensation for the loan. The silence of the books themselves seems evidence of the unsoundness of the doctrine now sought to be applied. It is considered that the mere fact of liability as a partner does not give an interest or ownership in the stock in trade ; the whole may have been purchased for and in the name of the visible partner, and it usually is so in cases of dormant partnerships. The property then is not the dormant partner’s to the prejudice of those who trust him who carries on the business and obtains the credit. Ex parte Enderby, 2 Barn. & Cressw. 389; Smith v. Watson, ibid. 401; George v. Clagett, 7 T. R. 359, 361, note.
So far as the cases of dormant partnership have been discussed, the opinions advanced have been of a contrary tendency. Thus an action may be maintained by the ostensible partners, without joining a dormant partner, against a person who dealt only with the ostensible partners. Montagu, 182 ; Leveck v. Shaftoe, 1 Esp. R. 468.[1] This shows that whether the action is to be affected or not, depends upon the parties with whom the contract is made.
So in an action brought by ostensible and dormant partners the defendant may set off a debt due from the ostensible part ner only. Montagu, 182; 7 T. R. 359; Lloyd v. Archbowle, 2 Taunt. 324. [2]
In the case of Curtis v. Perry, 6 Ves. 747, the following case is stated by the Lord Chancellor as having occurred, though there seems to be no report of it. Three persons, *355 partners in a manufactory in Lancashire, sold their goo dr a London in the names of two of them only. A credit tht e-fore was acquired by them all in Lancashire, and by two in London, which affected the distribution of their property. And in 2 Barn. & Cressw. 401, it is said, if a secret partnership could be set up as an answer to assignees claiming prop erty which had been left in the order and disposition of the bankrupt, as apparent owner, enormous debts, unconnected with the partnership business, might be contracted upon the credit gained by the possession of properly, which a person wholly unknown to the creditors might claim, to the exclusion of their just demands.
Finding therefore that this is a first attempt to maintain the preference which is sought for in this action, that the meritorious ground of preference in other cases does not here exist, and that the analogical reasoning upon cases which have been decided is against the defendant, we are of opinion that the plaintiff is entitled to recover of the deputy sheriff so much as remains in his hands of the proceeds of the property attached, after satisfying the execution of Aaron Brown.[1]
Loring inquired of the Court, whether the plaintiff was not entitled to the whole, and not merely to the surplus, as he was in fact a creditor of the partnership.

Per Curiam.

We could not determine that point in favor of the plaintiff, without notice to Aaron Brown. The judgment against him and John is binding upon him only for that suit; in another he might be able to show that there was no partnership.

 See Collyer on Partn. 393; Mitchell v. Vail, 2 Harr. & Gill, 159; Clark son v. Carter, 3 Cowen, 84; Barstow v. Gray, 3 Greenl. 409; Robson v Drummond, 2 Barn. & Adol. 303; Clark v. Miller, 4 Wendell, 628.

 See Revised Stat. c. 96, § 9; Collyer on Partn. 447; Rose v. Murchie, 2 Call, 409.

 See French v. Chase, 6 Greenl. 166.