By the Court.
Sandford, J.
By the agreement" set forth in the complaint, two separate firms, transacting mercantile business, were to operate separately, and in their respective names, in the sale of flour and other produce. Such operations were to be for the joint account and benefit of the two firms ; which is explained in the agreement itself to mean, that the two firms should share equally in the profits and loss arising from their separate dealings, in this particular branch of their general business. Each firm was to contract, as it did in all its other business, in its own name and without any control from the other. On the fulfilment of a contract, made, for example, by A. W. Otis & Co., and their receipt of the price, Wright & Losee would not, under this agreement, be part owners of the fund so received. They would have no share, right or interest in it, and they could not arrest it by injunction, in the hands of Otis & Co., even if they were to establish that the latter were insolvent and owed to them either profits in the contract thus closed, or in other like transactions, or in both.
There was no union of funds contemplated by the agreement. Each firm was to make and fulfil its own contracts': There was no union of services, because it might so happen that one of the *119 firms would be unable, or deem it unwise, to make any contracts at all; and yet, in the absence of bad faith, it would participate in the profits, and would certainly be liable to share the losses, of the contracts made by the other firm.
The whole effect of the agreement was to bind two distinct mercantile houses, acting in their own names, separately and independently of each other, to share the profits and losses, when they should be ascertained, arising from one particular department of their trade. We'think that this did not consti-' tute the two firms copartners in the contracts, which the respective separate firms made in the transaction, of that portion of their business.
It is very clear, that there was no intention in these firms to create such a relation between themselves. In the absence of such intention, and of a community of interest in the property out of which the profits are to arise, no partnership will be created between the parties and third persons, if the whole transaction is clearly susceptible of a different interpretation, or excludes some of the essential ingredients of a partnership. (Story on Part. § 30.) We have noticed some of the circumstances which lead to a different interpretation of this agreement. The ground upon which a participation in the profits of a trade is held to make parties liable to third persons, though they never intended to be partners as between themselves, as it was advanced by De Grey, Ch. J., in 2 W. Bl. 1000, and was adopted by the Supreme Court of this State in Dol v. Halsey, 16 John. 34, is entirely wanting in this case. Hence Wright & Losee could not, by the terms of this agreement, take any of the fund on which the creditors of Otis & Co. relied for payment. We have already said they have no right or interest in such fund. Their right to profits, received by Otis & Co., under the agreement, would make them creditors of that firm, with no advantage over other creditors, and with the disadvantage of a liability to counter claims for losses, or for profits, in their own contracts for the sale of produce.
When closely analysed, the case is not different from that of one who should agree to pay to a merchant a stipulated sum and agree to share his losses, in consideration that he should account to the former for half of the profits of his business for *120 pne year. Here each party agreed thus to account and share, in consideration of the like agreement of the .other. They were pot partners between themselves, and we see no good reason why they should be deemed partners as to third persons.
If we were to assume that the effect .of the agreement was to make Wright & Losee partners with Otis <fe Go. in the contracts of the latter for produce, there is a further difficulty in the way of the plaintiff. The investment npon which the suit is brought, is an .executory contract, for the sale of goods to the .amount of eleven thousand dollars, and unless subscribed by Wright & Losee, the parties sought to be charged, it is void by the statute of frauds. The complainant do.es not aver that Otis ,& Co., who subscribed .the contract in their own name, were the agents of Wright & Losee; and if such an averment had been made, it would not have aided the case. We have decided in a case now before us, (Fenly v. Stewart and Tunnicliff,) that on a similar executory, contract, subscribed by A. W. Otis & Co., in their own name, the defendants in that suit could not be charged, although it was proved that Otis & Co. were their agents in making the contract.
The plaintiff, not relying upon the ordinary principle of agency, argues that the .contract in question is subscribed by Wright & Losee because, pro hac vice, they ai'e members of the firm of A. W. Otis & Co., in whose name it is subscribed. That it is immaterial in what name the contract is made, or the general business of the partnership is carried' on, provided the partners agree to nse that name.
There can be no doubt of the latter proposition, and it is equally true that the signature of the copartnership name to a contract not under seal, is a subscription of it by all the partners, within the meaning of the statute of frauds. But it is very essential, and so the plaintiff’s point assumes, that there shall be a copartnership name which the partners have agreed tp use as suph. Now this complaint states no such name, nor any such agreement establishing it. Who composed the firm of A. W. Otis & Co. ? The complaint answers the question by its statement, that it was composed of the two Otises and the defendant, Clover—but does not state that those persons, together with. Wright and L.osee, composed that firm. Nor does it allege that *121 the two firms described in it, agreed to transact business under the name of either the one, or the other. It is claimed by the plaintiff that the complaint shows the formation of a partnership by all the persons composing these two distinct firms, but it is entirely silent as to the name or style which they assumed for the dealings of such new partnership.
The court cannot remedy this by inference ; and if it could, it would be absurd to infer that the five partners agreed that their new firm should have two names, viz. Wright & Losee, and A. W. Otis & Co., and that when either Wright or Losee made a contract, the firm name should be “ Wright & Losee,” and should be so subscribed and used, and when either of the other three contracted, the firm name should be “ A. W. Otis & Co.” throughout the transaction. No other inference would meet the difficulty, and we have neither the right nor the inclination to adopt the one suggested.
The plaintiff has therefore failed to show that the contract in question was subscribed by Wright & Losee, and it cannot be enforced against them. The judgment at the special term must be reversed, and a judgment entered in favor of the defendants on the demurrer to the complaint.